'Sutlirr, J.
The point principally relied upon by counsel of plaintiff in error, as showing error in overruling his demurrer, is, that it is averred, in the third count of the indictment, that the accused was in the possession and occupancy of said warehouse. It is insisted that the procuring by Allen to burn the house, while so in his possession, was not an offense within the meaning of the statute.
In the “act providing for the punishment of crimes,” passed March 7, 1835 (Curwen’s Stat. 181), it is provided, as follows:
*Sec. 12. “ That if any person shall willfully and maliciously burn, or cause to be burned, any dwelling-house, kitchen, smoke-house, shop, barn, stable, store-house, warehouse, malt-house, stilling-house, mill, or pottery, the property of any other person ; or any other building, the property of any other person, of the value of fifty dollars, or containing property to the value of fifty dollars; or any church, meeting-house, court-house, work-house, school-house, jail, or other building; or any ship, boat, or other water-craft, of the value of fifty dollars; or any bridge, of the value of fifty dollars, within this state; every person so offending shall be deemed guilty of arson, and, upon conviction thereof, shall be imprisoned in the penitentiary, and kept at hard labor, not more than twenty years, nor less than one year.”
It is also provided as follows, by section 36: “ That if any person shall aid, abet, or procure any other person to commit any of the offenses by this act made criminal, every person so offending shall, upon conviction thereof, be imprisoned in the penitentiary, and kept at hard labor, for any time between the respective periods for which the principal offender could be imprisoned for the principal offense; or, if such principal offender would, on conviction, bo punishable with death, or be imprisoned for life, then such aider, *242 abettor, or procurer shall be imprisoned for life, or be punished with death, as the occasion may require.”
The crime of arson, at common law, consisted in the malicious and willful burning, by a person, of the house or out-house of another. And whether the house wore a dwelling-house, or an outhouse, though not contiguous to the dwelling-house, nor under the same roof, as a barn or stable, its burning might, at common law, constitute arson. And the burning of a single barn in the field, if filled with hay or grain, though not within the curtilage of a dwelling-house, was accounted a felony! But it was *held that a burning by a tenant in possession was not a burning of the house of another, within the definition of the crime of arson.
. In Holmes’ case, at Michaelmas term, 1634, this question came before the king’s bench, and was fully considered. William Holmes had been indicted in London “ for that he in April, 7 Car. I, being possessed of an house in London, in Throgmorton street, in such a ward, for sis years, remainder to John S., etc., in fee: In vi et armis, 3 April, 7 Car. I, the said house f¿Ionice voluntarle, et malitiose igne combussit eaintentione ad eandem domum mansionale,” etc. Upon his being arraigned at Newgate he was found guilty, but before judgment the indictment was removed by certiorari into the king’s ¡bench. It was there argued that it was not felony. And it was held by Richardson, Chief Justice, and by Jones and Berkley, Justices, that it was not felony to burn a house whereof he '-is in possession, by virtue of a lease for years; for, they said, that ¡burning of houses is not felony, unless they are aedes alienas; and ■they refer to Britton, Bracton, and the Book Assize, as saying that ^burning of houses generally is felony, are intended “ de cedibus ,.aliensis, et non propriis.” And Berkley and Jones, Justices, held ■■“that it can not be said to be vi et armis when it (the house) is in !his own possession.” Croke’s Charles, 376.
The same holding in this respect was had under the statute 9th >-of 'G-eorge I., in chapter 22, making it felony “ to sot fire to any 'house, barn, or out-house, or to any home, cock-mow, or stack of •corn, straw, hay, or wood.” The King v. Spaulding, 1 Leach, 258. 'The common-law construction of the offense, that the thing burned must be in the possession of another, was applied to the offense deiclared by this statute. But for a tenant to burn a building bolongnng to another, of which he was in possession, was a high misdemeanor at common law, and punished by fine and pillory, and *243 surety required for future good behavior. But we have never had any common-law offenses in this *state. Our statute against the burning of buildings is not confined to the common-law offense of arson, or felonious burning. It seems to comprehend that kind of burning which, at common law, consti- - tuted merely a high misdemeanor, as well as those which were arson, or felonies at common law. The description of the offenses as well as the grade of punishment, extending as it does from one to twenty years, seems to indicate this to have been the object of the statute; and that our statute was meant to embrace the case of a tenant willfully and maliciously burning buildings, the property of another, of which he was the tenant, or in possession.
There is still another answer to this objection. The charge and conviction in this case were not that the tenant burnt the building; but that he procured another to bum it. ■ Suppose the principal, Herron, to have been put upon his trial and convicted for burning the building, it certainly could not be pretended that the offense as against him was not well charged, and within the statute, under the English construction. As to him, the building was cedes aliena. If, then, after the conviction and sentence of the principal for the' arson, Allen had been put on trial for having procured Herron to commit the arson, for which so convicted, it could not be objected that the crime of arson had not in fact been committed by Allen; nor could it be objected that Allen’s relation to the property had prevented his procuring Herron to burn the building. It follows, therefore, that even if the objection that Allen’s being in possession would prevent his being charged as principal for arson in burning the building, the objection could not be urged against his being charged as a procurer of the act.
But we think, upon sound reason and undoubted principles of law, derived from analogies as well as from the language of the ’ statute, it is sufficient to aver the property to be that of the general owner, as well as to aver it to” be the property of the special owner or tenant'. And there *being no legal or reasonable objection to so comprehensive a rule, we think that considerations of public convenience and a furtherance of the ends of justice recommend its adoption; and especially so, inasmuch as no contrary rule has ever, to our knowledge, been adopted in the courts of this state.
We perceive no error in allowing the. motion of the prosecuting *244 attorney to award a separate trial of Allen. He was charged with a distinct substantive offense, and it is difficult to perceive any objection to the order that could legally be made by the defendant. Herron acquiesced, and.the motion maybe regarded as made at'his instance.
Again: it can not be doubted that a nolle prosequi might have been entered by the state against either of the accused in this case, as it always has been the practice to do, under the general rule, where two or more are indicted for distinct substantive offenses; and that the piarty thus discharged might be inxproved as a witness for or against the others upon trial. And in the case at bar, the severance having been made, and the case continued as to Herron, he became a legal witness either for or against Allen on his trial, the same as he would have been had separate indictments been returned against each.
It is said to be a settled rule of evidence, that a particeps criminis, notwithstanding the turpitude of his conduct, is not on that account an incompetent witness, so long as he remains not convicted and sentenced for an infamous crime; and it makes no difference as to the admissibility of an accomplice, whether he is indicted or not, if he has not been put on his trial at the same time with his companions in crime. 1 Greenleaf Ev. 379; Jones v. State of Georgia, 1 Kelly, 610; Noland v. The State, 19 Ohio, 131.
We do not regard the charge of the court in relation to the name of the building as exceptionable. It was quite immaterial to the issue what had been the name or character *of the building. The use of a building is not unfrequently changed. A building once a warehouse may have become a tannery, a shop, or a mill; and if burned after its use and character has been thus changed, it must be described by its true character when burned, without respect to its name or character when built. It is true, the word warehouse is sometimes used in a very strict sense, as a somewhat technical term in commercial language. And it is not unfrequently in law confined to this restrictive sense. Goods to be delivered for shipment at some warehouse at a seaport town, would imply a particular kind of warehouse, familiarly and well understood in connection with the commercial business for which such houses were used. But the word warehouse, in its general acceptation, and as used in this statute, is one of much more comprehensive import, and embracing, we have no doubt, buildings used for such purposes *245 ns expressed by the court, in the instructions given to the jury upon the subject. Nor could it make any difference whether the goods stored in such house belonged to the occupant, or were merely stored by him as bailee.
The first, second, and fourth causes assigned, seem to rest substantially upon the same ground, and have already been considered.
It is also insisted that the court erred in not giving the instruction requested .to the jury in relation to Herron’s testimony. But we perceive no error in the refusal of the court to give the instruction proposed by counsel, nor in the instruction actually given to the jury upon that subject.
The degree of credit which ought to be given to the testimony of an accomplice, is a matter exclusively for the consideration of the jury. In most cases it is highly important that the jury should require his testimony to be corroborated by other evidence or circumstances, rather than to convict upon his unsupported testimony. Indeed, it can very rarely be expected that the testimony of an accomplice, ^admitting his own depravity and turpitude in the matter, would be sufficient to overcome all reasonable doubts and presumptions in favor of the accused. But it is said there is no rule of law requiring of the jury a refusal to convict upon the uncorroborated testimony of an accomplice. This doctrine is distinctly laid down by Greenleaf, in his Treatise on Evidence, vol. 1, sec. 380; but he adds that “ judges, in their discretion, will advise a jury not to convict of felony, upon the testimony of an accomplice alone, and without corroboration. And it is now so generally the practice to give them such advice, that its omission would be regarded as an omission of duty on the part of the judge.” The court gave this usual caution to the jury; and the evidence sot forth in the record, does not show that that advice of the court was disregarded.
The case of The People v. Castello, 1 Donio, 83, is a case in which the authorities upon this point are well collected and ably considered ; and that case, as well as Greenleaf, fully sustains the opinion here expressed upon this point.
But the record shows that during the cross-examination of Herron, a question was proposed by Allen’s counsel, which was objected to by the counsel for the state, and that the objection was sustained by the court; and that the counsel of Allen excepted at the timo thereto. The following is the question proposed by Allen’s counsel *246 to Herron on bis cross-examination: “ If Allen is convicted, do yon exjject to be prosecuted?” We are clearly of opinion that the accused was entitled to an answer to this question. It was material and pertinent to show the influences and inducements under which the witness testified. For, although Herron was a competent witness, the degree of credibility to whieh he was entitled, was a matter depending, perhaps, not less upon the influences and inducements he might have to swerve from the truth, than upon his moral character. The depravity and turpitude of the witness was to a great extent before the jury, in his *own acknowledged complicity, as principle, in the criminal act charged. But the accused had an unquestionable right, as well by the answers of the witness on cross-examination, as by other proof, to still further invalidate his credibility, by showing an existing motive in the mind of the witness to give testimony against him, regardless of truth. It is true the record shows that Allen was permitted to prove by Herron, what communications he had held with the prosecuting attorney, or any other person connected with the prosecution, in reference to his not being prosecuted; but that was not all to which the accused was entitled. The substantive fact of importance to invalidate the testimony of Herron was, that_ he expected to he the gainer by the conviction of Allen. If he really believed that, in case of Allen’s conviction, he, Herron, would be discharged ; and that in case Allen was not convicted, he, Herron, would be put upon his trial and be convicted, Allen had the right to have the jury know the strong inducement to swear falsely against him, under which Herron testified. Nor could the fact be at all material, whether Herron had come to so regard his own safety, as depending upon Allen’s being convicted, from conversations with the prosocuting attorney, or from conversations with his own friends, in whose information and representations he had implicit confidence. The material fact in which Allen had an interest, and right to show to the jury by a cross-examination, was the biasing influence under whieh Herron had given testimony against him. And the court, by sustaining the objection, denied him that right. We are of opinion that the court erred in sustaining the objection; and, for this cause, the judgment of the court of common pleas must be Reversed,'and the cause remanded to that court for further proceedings.
Brinkerhoee, C. J., and Scott, Peck, and G-holson, JJ., concurred